THE WILLIAM POWER.[1]

(District Court, E. D. New York. January 4, 1904.)

1. SHIPPING—DAMAGE TO CARGO—UNSEAWORTHINESS.

Damage to a cargo of hay from water *held*, under the evidence, to have been due to leakage, owing to the inability of the vessel to carry the cargo for which she was chartered without straining, which rendered her unseaworthy.

In Admiralty. Suit for damage to cargo.

William J. Cleary, for claimant.

Simpson, Thacher, Barnum & Bartlett (Dean Sage and Mark Hyman, of counsel), for libelant.

THOMAS, District Judge. This action is by a shipper against the canal boat William Power for such injury to 376 bales of hay in transit as to render it valueless. The hay was ruined at the time of its arrival by contact with water. One of the libelant's witnesses states that he saw—

"Long seams that were wet, and stains trickling down from them. I did not see the water trickling through, but the indications were there of there being leaks. Q. Was the inside of the boat—the side of the boat on the inside, around the seams you mentioned—damp? A. Wet just where the bales came from under the decks. * * * How many wet seams did you observe? A. Some of the seams were quite long. I should say I saw three or four probably 10 feet long. Q. On both sides of the boat, or on one? A. Mostly on the off side. Q. Do you know or did you observe any of the bales of hay which were afterwards rejected being removed from such a position on the side of the canal boat where it would be in contact with the damp seams that you have mentioned? A. It came from right along the side of the boat. They were taken right from those places."

The claimant states that before entering St. Johns on his outward journey, and before taking the hay, there was a shower, and his canal boat, which had open hatches, was damp therefrom, and that, against his advice or protest, the shippers scattered a quantity of fine chaff along the bottom, and that this absorbed the moisture and communicated it to the hay. The ruined hay was baled in such a way as to be best guarded against water. The tiers next to the bottom and the sides of the vessel in a particular section of the hold were in the condition stated by the witness. It is highly improbable that such condition of wetting and molding could have come from so slight a cause to such a quantity of hay so baled, from mere dampness arising through chaff, and also rising above the wooden dunnage over the chaff. The claimant is also understood to contend that the boat was overloaded, or the load improperly distributed, and hence sprung a leak. The charter party did not require the shipper to load or to distribute the cargo, although the expense of it was to be borne by him. The master contends that he objected to the manner of distributing the load, but it is doubtful if he carried his protest to the shipper. In any case, his remonstrance was feeble. However, it was his duty to attend to the distribution of the cargo. It seems to be further objected that the boat was overloaded. The shipper was entitled to the cargo spaces, and it was the duty of the carrier to furnish a vessel that was seaworthy for

a full load. If he thought that she was being overloaded, he should have stopped it. It is considered, however, that the leak was caused from her inability to carry, without straining, the load demanded by the charter.

The libelant should have a decree.